BRIGGS (GOODSELL v.). See Case No. 5,-548.

BRIGGS (GREENE v.). See Case No. 5,-764.

## Case No. 1,872.

### BRIGGS et al. v. JOHNSON COUNTY.

[4 Dill. 148;[1] 4 Cent. Law J. 414.]

Circuit Court, W. D. Missouri. 1877.

MUNICIPAL BONDS — CONSTITUTIONAL LAW — TAXATION — MISSOURI NORMAL SCHOOL ACT CONSTITUTIONAL — BONDS ISSUED THEREUNDER VALID.

1. The act of the legislature of Missouri, entitled "An act to aid in the establishment of normal schools," approved March 19th, 1870, is constitutional and valid.

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

2. The Missouri constitution of 1865, art. 9, § 2, provides that, "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the general assembly shall establish and maintain free schools for the gratuitous instruction of all persons in the state between the ages of five and twenty-one years." Section 4 is as follows: "The general assembly shall also establish and maintain a state university, with departments for instruction in teaching, in agriculture, and in natural science, as soon as the public school fund will permit:" Held, that the fact that the free schools and a state university are expressly mentioned in the constitution, and normal schools are not, does not amount to a constitutional prohibition against their establishment.

3. Normal schools being public institutions, the legislature possesses the right to grant the power of taxation in aid of their establishment.

4. The normal school act of March 19th, 1870, neither violates the principle of equal taxation, nor falls within the constitutional prohibition regarding special legislation.

Plaintiffs bring their suit on coupons detached from Johnson county bonds, known as normal school bonds, issued under an act of the legislature of Missouri, entitled "An act to aid in the establishment of normal schools," approved March 19th, 1870. The act declares that, for the purpose of establishing normal schools, the state is divided into two districts; the counties north of the Missouri river constituting the first district, and the counties south of the river, except St. Louis county, constituting the second normal school district. The second section of said act provides: "In each of the districts aforesaid one normal school shall be established, as hereinafter provided, in the county which may offer the greatest inducement by way of buildings and grounds, which shall, however, not be less than twenty-five thousand dollars in value; and any county or city may donate or subscribe to the normal school of the district in which it is located, such sum of money as two-thirds of the qualified voters thereof shall, at a regular or special election to be held therein, determine upon; and to pay the same, may issue bonds running for not less than twenty years, and bearing interest at a rate not exceeding ten per centum per annum, and convert the same into cash at such rates as may be deemed proper by the county court of such county, or the mayor and council of such city; and may also levy and collect such tax as may be required to pay the interest of said bonds and the principal thereof, as the same becomes due." The law further provides for a board of regents, to consist of seven persons, the state board of education and four additional—two from each normal school district—to be appointed by the governor, to which board of regents the general control and management of the normal schools to be established under the act was entrusted. In order to enable the various counties to make their offers for securing a normal school available, the board of regents was authorized to receive offers and pass upon them, to select from among them the one most favorable for the purpose intended, inspect the buildings and assess their value, * * * and, when accepted, the property was to be conveyed to the board of regents, who were to hold the same in trust for the purpose intended. The law further provides that all offers of buildings and grounds, suitable for the schools contemplated by the act, shall be forwarded to the state superintendent of public schools, for the consideration of the board of education; and when any bid or bids shall have been made proper for the consideration of the board of regents, the board of education shall call a meeting of the board of regents, who shall consider all offers and bids made, and proceed to secure the accepted offer, buildings and grounds, by proper deed, and establish therein a normal school for the district in which the county that made the offer is located. The act further appropriates five thousand dollars annually for the payment of teachers' salaries of each school to be established, and requires the board of regents to make annual reports to the state superintendent of public schools, containing a full account of the acts of the board, of all receipts and disbursements, and the condition of said state normal schools; and such report shall be transmitted to the legislature by said superintendent as a part of his annual report. The provisions of the law quoted are those to which constitutional objections are raised, and such as are necessary for a proper understanding of the act and its purposes. The declaration is in the usual form upon the coupons due and unpaid, setting out a copy of the bond in full, which is as follows:

"United States of America, State of Missouri, Johnson County. No. 42. Interest, ten per cent. per annum, payable semi-annually. $1,000. Know all men by these presents: That the county of Johnson, in the state of Missouri, acknowledges itself indebted and firmly bound unto the bearer in the sum of one thousand dollars; which sum the said county of Johnson, for value received, hereby promises to pay to the bearer, at the Bank of America, in the city and state of New York, twenty years after date hereof, with interest thereon from this date at the rate of ten per centum per annum, payable semi-annually, on the first days of August and February in each year, on the presentation and delivery at said Bank of America of the coupons of interest hereto attached. This bond is issued pursuant to an order of the county court of said county of Johnson, to pay the subscription of one hundred thousand dollars to the normal school of the district in which said county is located, determined upon by a vote of more than two-thirds of the qualified voters of said county of Johnson, and in pursuance of an act of the general assembly of the state of Missouri, entitled 'An act to aid in the estab-

lishment of normal schools,' approved March 19th, 1870 [Laws Mo. 1870, p. 134]. In testimony whereof, the said county of Johnson has executed this bond."

The coupons are in the usual form.

To this declaration a demurrer is filed, assigning for causes that the normal school act, under which the bonds were issued, is unconstitutional and void, and the bonds issued thereunder are invalid. [Demurrer overruled.]

Thomas K. Skinker, for plaintiff.

Thomas C. Reynolds, and Crandall & Sinnett, for defendants.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

KREKEL, District Judge. The grounds of demurrer, and arguments in support thereof, may be considered under the following heads: public policy; unconstitutional grant of the taxing power; special legislation.

As to public policy: It has long been a recognized fact that the order and well-being of any community largely depended on its moral and intellectual culture; and nearly all nations making any pretensions to civilization have in some way or other recognized this. The encouragement usually was in keeping with the prevailing form of government and social organization. As these became modified, so as to distribute burdens and benefits more equally, educational interest came in for a share of its favors. Not, however, until intelligence had demonstrated its physical power beyond cavil and dispute, did education obtain the universal recognition it deserves. Organizing armies and schools, improving implements of war, and the school-master, became equally of national concern. At the birth of our government, education had not obtained national recognition; for, beyond "the promotion of science and arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries," no attempt is made in the constitution of the United States to draw education within national cognizance—thus indirectly delegating it to the states. In them it found more or less favor, until to-day there is not a state in the Union which fails to recognize its importance. The constitution of the state of Missouri, under which the normal school act was passed, in 'its ninth article provides: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the general assembly shall establish and maintain free schools for the gratuitous instruction of all persons in the state between the ages of five and twenty-one years." While the policy of the state regarding education is thus represented, it is argued that the constitution confines legislation to the establishment and maintenance of free schools and a state university—the latter provided for in section 4 of the article cited. It is true that, under this last section and the language thereof, "the general assembly shall also establish and maintain a state university, with departments for instruction in teaching, in agriculture, and in natural science." Normal schools might have been established; and had provisions similar in import been found in the constitution of the United States, and called for construction, a serious question might have arisen on account of its limited character and the necessity of an affirmative grant. In state constitutions, coming as they do from the people, in whom all political power resides, we look, on the contrary, for provisions denying to the legislature powers not to be exercised; for, without such a denial, the exercise of legislative functions is said to be unlimited, and the discretion of the legislature untrammelled. For courts to declare an act unconstitutional, because, in their opinion, the object had in view might have been accomplished in a different way, would be to substitute the dictum of a judge for the discretion of the legislature.

Another argument is that, while free schools and the state university are mentioned in the constitution, nothing is said of normal schools, and that the ignoring of them is equal to a constitutional prohibition. It has already been pointed out that such a construction is not favored, when applied to state constitutions. Supposing the constitution, after declaring that the diffusion of knowledge and intelligence is essential to the preservation of the rights and liberties of the people, had stopped—would not the establishment of any kind of a school calculated to diffuse knowledge and intelligence have been within the power of the legislature? In order to secure such schools as were undoubtedly deemed the most essential, the constitution commands them to be established and maintained.

The constitution having vested all legislative power not prohibited by the constitution of the United States in the general assembly, the establishing of normal or other schools than those named, it is fair to presume, was intended to be left with the legislature. That normal schools are public institutions, useful and necessary for the full development of free schools, is not disputed.

The conclusions, from the views entertained and indicated, are, that the normal school act is in keeping with public policy, and the policy of the state of Missouri, and the passing of it a legitimate exercise of power under the injunctions of the constitution, and an act of discretion on the part of the legislature, which this court claims no right to control or criticise.

Coming to the consideration of the second ground of demurrer and arguments—the unconstitutional grant of the taxing power—it may well be introduced by a quotation from the case of Citizens' Sav. & Loan Ass'n

v. Topeka, 20 Wall. [87 U. S.] 655. Mr. Justice Miller, speaking for the court, says: "It is quite true that a decided preponderance of authority is to be found in favor of the proposition that the legislature of the states, unless restricted by some special provision of their constitutions, may confer upon municipal bodies the right to take stock and lend their credit to corporations, and levy taxes on the inhabitants and on property within their limits, subject to general taxation, to pay the debts thus incurred. In all cases, however, the discussions turned upon the question whether the taxation was for public purposes, and this has been the turning point of the judgment of the courts. In no case have debts created by counties or towns been held valid, except on the ground that the purpose for which the taxes were levied was a public use—a purpose or object which it was the right and the duty of state governments to assist by money raised from the people by taxation."

It has already been shown that normal schools are public institutions, and, as such, the legislature had a right to establish and maintain them. If this be so under the views of the supreme court of the United States, as expressed by Mr. Justice Miller, the legislature had the right to grant the power of taxation in aid of their establishment. It is said, however, that the normal school act violates the principle of equal taxation in this, that Johnson county is made to contribute a larger share in support of the normal school than other property of the state. This argument, if valid, would be available against all classes of aid given to public objects; for the benefits of scarcely any of them operate equally, even on the small scale of a county. Take the case of a railroad, for instance: its benefits are greatest when reasonably near, and specially in the proximity of a station. Johnson county was invited, under the normal school act, to enter into competition; and, no doubt, the voters favoring the subscription did so—not so much on account of the general, as the local benefit to be derived from the school. In addition to the special benefit secured, they enjoy equally with the people of the state the general benefits of the school. Section 16 of the declaration of rights, even if not limited to the question of eminent domain, providing that "no private property ought to be taken or applied to public use without just compensation," has been fully met. The property of the people of Johnson county was voluntarily contributed, after fully considering the question of compensation, at an election at which more than two-thirds voted for the appropriation.

The remaining question to be considered is, does the normal school act fall within the constitutional prohibition regarding special legislation?

The twenty-seventh section of article 4, after enumerating a large class of cases, and prohibiting the legislature from passing special laws regarding them, concludes by providing: "The general assembly shall pass no special law for any case for which provision can be made by general law; but shall pass general laws, providing, so far as it may deem necessary, for the cases enumerated in this section, and for all other cases where a general law can be made applicable."

The large discretion left to the legislature in these provisions is obvious. The inhibition in the first part of the quotation is the passing of special laws in any case for which provision by general law can be made. The command in the last part of the clause cited, is that general laws shall be passed in all other cases where they can be made applicable. The legislature is entrusted with the determination for what cases provisions by general laws can be made; so, also, to what cases general laws can be made applicable. Under such provisions, a court would hesitate long before declaring an act passed unconstitutional.

Looking at the object to be effected, it would appear that the normal school act partakes more of the nature of a general law than a special act. It is the application of a law to a particular person or persons, or special facts and circumstances, which gives it character, either as a general or special act. This becomes obvious from an examination of the cases specified in the clause regarding which no special laws are to be passed.

It is further argued that, because the body of regents who are to control the schools is neither a corporation, company, or association, nor a department of the state university, nor a free school, as enumerated in the constitution, normal schools have no legal existence, and the legislature no power to authorize or permit a county to subscribe thereto, and the bonds issued are therefore void.

The question as to limiting by implication the legislative power under a state constitution has been considered. The legislature, being free to act, possesses the power of choosing the instrumentalities deemed best, and of creating such as may be found necessary.

The normal school is the legitimate offspring of the school law, aims at the very object it seeks to accomplish, and is but a link in the educational system of the state.

The labored briefs in the case have been a great aid in the examination. The arguments and authorities cited have been carefully considered. The conclusion arrived at is, that the demurrer is not well taken, and, therefore, it is overruled. The conclusions reached make it unnecessary to determine the question of former adjudication raised by the pleadings. Judgment accordingly.